IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LUKAS HENDERSON,

                      Plaintiff,                           OPINION and ORDER

    v.

                                                            21-cv-384-wmc

UNION PACIFIC RAILROAD COMPANY and
PROFESSIONAL TRANSPORTATION, INC.,

                      Defendants.

Plaintiff Lukas Henderson was severely injured in a motor vehicle accident while working as a conductor for defendant Union Pacific Railroad.  In anticipation of the final pretrial conference scheduled for January 13 at 2:30 p.m., this order addresses the parties' motions in limine.

OPINION

**A. Plaintiff's Omnibus Motion in Limine (Dkt. #123)**

    **1. Motion to preclude evidence and argument concerning the amount that plaintiff settled his claim against Covenant Transportation Group, Inc.**

As discussed in this court's previous orders (dkt. ##113, 116), the jury will be directed to apportion fault between Covenant, Union Pacific and PTI consistent with the *Pierringer* release entered into between plaintiff and Covenant.  As the parties agree, however, the settlement agreement will not be discussed in front of the jury.  Instead, Covenant will be the proverbial "empty chair," whose conduct and liability will be for the parties to characterize as they believe the *evidence* supports.  Accordingly, this motion will

be GRANTED, and the parties are precluded from introducing *any* evidence or argument about plaintiff's settlement with Covenant or the *Pierringer* release.

2. **Motion to preclude evidence and argument referring to collateral source benefits in the form of off-track vehicle benefits under his union's collective bargaining agreement**

After the accident at issue in this case, plaintiff received "off-track vehicle benefits" under his union's collective bargaining agreement. Such benefits are available for railroad employees injured in situations such as automobile accidents. Plaintiff argues that evidence of the benefits should be precluded because they are collateral source benefits, similar to Railroad Retirement Benefits, evidence of which this court has generally precluded unless the plaintiff opens the door by asserting that he did not receive such benefit or suffered distress due to lack of income. *See Berry v. Wisconsin Central*, 21-cv-220-wmc, 2022 WL 3576203, at *2 (W.D. Wis. Aug. 19, 2022) (citing *Eichel v. New York Cent. R.R. Co.*, 375 U.S. 253 (1963)). Union Pacific opposes the motion, arguing that the off-track vehicle benefits are admissible at trial because the collective bargaining agreement, and the terms of plaintiff's acceptance of the benefits, specifically allow Union Pacific to offset damages in a FELA case based on its payments.

This motion will be GRANTED IN PART and DENIED IN PART. The court agrees with Union Pacific that the off-track vehicle benefits are different from the Railroad Retirement Benefits addressed in *Eichel*, as the off-track vehicle benefits were specifically bargained for by the railroad and union with the purpose of offsetting damages in a FELA case. (Dkt. #176-1, Henderson's Off-Track Vehicle Mediation Agreement) ("[T]his payment does not affect any right I might have to recover damages under the provisions of

the Federal Employer's Liability Act or any other law, except that the amount of any such recovery *will* be reduced by the total consideration specified in this receipt.") (emphasis added).  However, the off-track vehicle benefits are a specific sum paid to plaintiff, and will offset that recovery, if any, but there is no need for the jury to consider evidence or argument about the benefits.  If plaintiff is awarded FELA damages, the court will reduce plaintiff's damage recovery by the amount plaintiff received in off-track vehicle benefits. As is this court's general practice regarding collateral source benefits, therefore, defendants are precluded from introducing evidence of plaintiff's off-track vehicle benefits *unless* plaintiff opens the door to such evidence by affirmatively asserting that he received no benefits or suffered a financial hardship due to a lack of income.

### 3.  Motion to preclude evidence and arguments concerning plaintiff's prior medical treatment and conditions not at issue in this litigation

Plaintiff says that none of his prior medical conditions are relevant to the injuries he claims to have suffered as a result of the motor vehicle accident at issue here, and he asks the court to preclude defendants from introducing evidence regarding prior medical conditions and treatment.  In response, defendants agree that plaintiff's prior shoulder condition and other minor ailments have no relevance and are inadmissible, but they oppose the motion more generally, arguing that they should be permitted, at the very least, to introduce evidence of plaintiff's "previous psychological and mental conditions related to . . . prior accidents." (Dkt. #178, at 1.)  Specifically, they point to plaintiff's testimony of being in two other car accidents -- one involving "a hydroplaning incident" and the other

3

a "rollover accident where his vehicle went off a cliff" (dkt. #178-1, at 135) that they speculate may have affected his mental health.

However, defendants have identified no expert testimony or other admissible evidence supporting any reasonable inference that plaintiff had previous injuries or mental health conditions causing, or even contributing to, plaintiff's claimed injuries arising out of this accident.   Indeed, they cite solely to the expert report of Dr. Lisa Rone, a psychiatrist, who mentions "prior accidents," but nowhere in her report does Rone connect those prior accidents to plaintiff's claimed injuries. (Dkt. #178-4.) Moreover, under FELA, a railroad company is liable so long as its negligence contributed in some way to the plaintiff's injury.  45 U.S.C. § 51 (railroad employer liable if an employee's injury or death is caused "in whole or in part" by employer's negligence).  Thus, plaintiff's damages would not be reduced, even if something else aside from the employer's negligence, such as a prior serious motor vehicle accident, also contributed to plaintiff's claimed psychological injuries.  *See Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 166 (2003) ("Under the FELA, an employee who suffers an 'injury' caused 'in whole or in part' by a railroad's negligence may recover his or her full damages from the railroad, regardless of whether the injury was also caused 'in part' by the actions of a third party.").  Therefore, this motion will be GRANTED.

4. **Motion to preclude evidence and arguments concerning offers of employment for jobs beyond plaintiff's physical capabilities, outside his community or that are not bona fide offers of employment in support of defendants' mitigation defense**

Plaintiff asks the court to preclude defendants from arguing or presenting evidence that plaintiff failed to mitigate his damages by rejecting certain types of jobs. However, plaintiff identifies no specific job offers or other evidence that should be precluded, and the court declines to rule on this motion in the abstract. For example, from the parties' submissions, there appear to be genuine disputes of material fact regarding whether plaintiff's injuries preclude him from working (1) in his previous occupation as a conductor for Union Pacific or (2) in some other position with the railroad. More generally, plaintiff cites no legal authority that would prohibit Union Pacific from offering evidence about jobs available in the geographic area in which plaintiff worked at the time of the accident, or the area in which plaintiff now works. Therefore, this motion will be DENIED.

5. **Motion to preclude evidence that Union Pacific would allow plaintiff to return to his former position as a conductor**

Similar to the previous motion, plaintiff requests that the court preclude evidence that Union Pacific would allow plaintiff to return to work as a conductor. Plaintiff says that Union Pacific has never offered him a position as a conductor that he could perform with his physical limitations. However, as discussed above, there appears to be genuine factual disputes regarding: plaintiff's physical limitations; whether he has refused to return to work at Union Pacific; and whether he could work as a conductor. Accordingly, this motion will also be DENIED.

**B. Union Pacific and PTI's Motions in Limine (dkt. #43)**

**1. Motion to preclude evidence of John Sullivan's prior speeding violations (dkt. #130)**

John Sullivan, who was driving the PTI vehicle at the time of the collision, had seven previous speeding violations at the time of the accident. Defendants argue that evidence of prior speeding violations should be precluded because: (1) they have already admitted that breaching their duty of care to plaintiff; and (2) the speed at which Sullivan drove on prior occasions is unduly prejudicial and irrelevant to whether his actions caused the accident in this case.

Evidence from the PTI vehicle recording system establishes that Sullivan was driving 69 miles per hour in a 70 miles per hour zone just before the collision. Because there is no genuine factual dispute about whether Sullivan was speeding at the time of the accident, the court agrees with defendants that Sullivan's prior speeding tickets are irrelevant to whether he was negligent at the time of the accident in this case, and regardless would be overly prejudicial and constitute inadmissible character evidence. Therefore, the court will GRANT the motion with respect to this evidence being used to prove that Sullivan was speeding or driving negligently at the time of the accident.

However, the court will RESERVE as to whether the evidence may be used for another purpose. In particular, plaintiff argues that the speeding tickets are relevant to whether Union Pacific and PTI were negligent in hiring or permitting Sullivan to transport others, as his driving history shows he was a careless driver. Because plaintiff has not proposed any jury instruction or verdict question addressing a negligent hiring, training or supervision claim, it is unclear whether he wishes to do so *or* has any evidence to support

such a claim.  Thus, the court will RESERVE on this part of the motion pending further input from the parties at the FPTC.

### 2. Motion to preclude evidence that PTI terminated John Sullivan (dkt. #132)

While PTI terminated John Sullivan's employment after the accident at issue in this case, defendants say the fact of that firing constitutes an inadmissible, subsequent remedial measure to prove negligence under Federal Rule of Evidence 407.  The court agrees.  Since plaintiff has not demonstrated that Sullivan's termination is admissible to prove anything other than defendants' negligence, this motion will be GRANTED.

### 3. Motion to preclude introduction of Veronica Oglesby's memo regarding whether John Sullivan could have avoided the accident (dkt. #134)

PTI Senior Field Safety Officer Veronica Oglesby investigated the accident and drafted a memo in which she concluded that "Mr. Sullivan failed to recognize the hazard in a timely manner and respond accordingly."  (Dkt. #134-1, Oglesby memo, at 2.) Defendants argue that perception-response time requires scientific and technical analysis, which Oglesby did not apply, and that her memo should be barred under Federal Rules of Evidence 701(c) and 702 as scientifically unreliable.  They also argue that the memo should be barred under Federal Rule of Evidence 403 because any limited probative value is outweighed by the danger of unfair prejudice.

While plaintiff argues that Oglesby's memo is admissible as a statement of a party opponent under Federal Rule of Evidence 801(d)(2)(A), that rule would only address an objection to the memo constituting hearsay.  Here, the question is whether Oglesby's

conclusion constitutes an expert opinion that requires scientific or technical knowledge. *See Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 760–61 (7th Cir. 2003) (finding "no good reason why unqualified and unreliable scientific knowledge should be exempted from the expert evidence rules simply because the speaker is an employee of a party-opponent"). At the FPTC, the court will hear from the parties as to whether Oglesby's memo and conclusion constitutes expert opinion, whether it was based on reliable methods, and whether Oglesby was qualified to make it.  The court will also hear from plaintiff if there is some evidence of either defendant adopting Oglesby's observation as its own.  Until then, the court will RESERVE on defendants' motion.

### 4.  Motion to preclude plaintiff from introducing evidence of problems with other PTI drivers (dkt. #136)

This motion will be GRANTED as unopposed.

### 5.  Motion to bar Melissa Kennedy from offering any testimony about the speed of the vehicle that passed her (dkt. #138)

### 6.  Motion to bar Melissa Kennedy's opinion that "man is hurrying to the scene of his accident" (dkt. #140)

These two motions concern the testimony of Melissa Kennedy, a truck driver who was traveling west on Interstate 94, in the same direction as the PTI vehicle carrying plaintiff, on the morning of the accident.  Kennedy did not witness the collision, but was the third or fourth vehicle to arrive at the scene after the accident occurred.  Plaintiff seeks to introduce statements Kennedy made in an email that she sent to Covenant the morning after the crash, in which she stated that the SUV involved in the accident had passed her, minutes before the accident, traveling 90 miles per hour, and that she had thought to

8

herself that the "man is hurrying to the scene of his accident." (Dkt. #140-2.)  However, defendants argue that these statements should be precluded because Kennedy later testified at her deposition that:  (1) she was not certain the vehicle that passed her and the one involved in the accident were the same; (2) she was not actually sure how fast the vehicle was traveling, and (3) her statement that the man was "hurrying the scene of his accident" is an opinion statement that would be unfairly prejudicial.

The motions will be GRANTED IN PART and DENIED IN PART.  The court agrees with defendants that:  Kennedy cannot testify as to the exact speed that the SUV was traveling, as she later admitted that she did not know; and plaintiff cannot ask about her statement that the SUV was "hurrying to the scene of his accident," because that opinion statement has no probative value.  Based on the speed she was traveling, however, Kennedy may testify that the SUV passing her appeared to be speeding and driving on the rumble strip, and the car involved in the accident appeared to be the same color, make and model.  Those statements are relevant to whether Sullivan was driving negligently just before the accident.

### 7. Motion to bar plaintiff from eliciting causation opinions from lay witnesses (dkt. #142)

Defendants argue that any opinion regarding causation would necessarily be an expert opinion, and because plaintiff did not disclose an accident reconstruction or engineering expert, he cannot offer any opinions on causation.  However, defendants identify no specific opinion that they believe should be excluded as improper expert opinion, and absent legal authority, this court declines to enter a blanket prohibition on

"causation" opinions by a lay witness.  Accordingly, this motion will be DENIED. Defendants may identify a specific opinion that they believe should be precluded at the FPTC, or they may object to improper expert opinion testimony at trial.

### 8. Motion to bar Trooper Desprez from offering causation opinions, opinions about whether any person acted negligently, or any other expert opinion testimony (dkt. #144)

This motion is similar to the previous one, except that defendants do specifically identify some of Trooper Joseph Desprez's deposition statements as improper expert opinion regarding causation.  Desprez did not witness the accident, but he arrived on the scene sometime later, performed an investigation, and drafted a crash report.  After his investigation, he further issued a citation to the driver of the Covenant semitruck, but concluded that the PTI driver was not responsible for the accident and did not issue him a citation.  However, Desprez gave opinions at his deposition about what he would have done had he approached a vehicle with flashing lights or a potential accident, (dkt. #197, Desprez deposition, at 52–60), which defendants say are improper opinion testimony.

This motion will be GRANTED IN PART and DENIED IN PART.  Desprez may testify as to the facts he obtained while investigating the accident, as well as how he determined whether to issue citations.  However, statements elicited at his deposition in this case that he would have slowed down under the same circumstances are improper opinion statements that could confuse the jury and unfairly prejudice defendants.  Specifically, Desprez's statements that he would have slowed down to determine why a vehicle was using emergency flashers appear to have been based largely on his role as a law enforcement officer, and do not appear to be helpful for a jury asked to determine (at least

10

in part) how a professional truck driver should have responded to the situation.  Regardless, Desprez also acknowledged that:  (1) there are many reasons why vehicles use flashers; (2) it is not improper to pass such vehicles; and (3) people generally would not expect to approach an overturned semitruck on the interstate.  (*Id.* at 50–54, 60–61.)  At best, then, admitting his statements about what he would have done would likely be confusing and unfairly prejudicial to defendants.

### 9.  Motion to bar comments on the veracity of other witnesses' statements and general comments on eyewitness memory (dkt. #146)

This motion will be DENIED IN PART and GRANTED IN PART.  Defendants are correct that the jury decides questions of witness credibility.  Thus, no witness may provide general opinions about the credibility of other witnesses.  However, the parties may introduce testimony and other evidence that tends to undermine the credibility of witness statements.  The parties may raise specific statements or opinions that they think should be excluded under this ruling at the FPTC should they wish.

### 10.  Motion to preclude the other passenger in the PTI vehicle from testifying regarding his settlement with Union Pacific and PTI (dkt. #148)

This motion will be GRANTED as unopposed.

### 11.  Motion to bar Duane James from testifying regarding his injuries and medical treatment (dkt. #150)

This motion will be GRANTED as unopposed.

### 12.  Motion to bar Dr. Joseph Nemanich under Rule 702 and 703

Defendants argue that plaintiff's treating physician, Dr. Nemanich, should be precluded from offering opinions regarding the permanency of plaintiff's restrictions and whether his ACL tear was caused by the accident because his opinions are too speculative and unsupported by Nemanich's own medical records.

This motion will be DENIED.  Defendants' arguments go to the weight of Nemanich's testimony, not its admissibility.  Of course, defendants are free to cross-examine Nemanich and point out arguable weaknesses in those opinions at trial, as well as introduce contrary evidence.

### 13.  Motion to bar Jeffrey Opp from offering opinions or bases included in his late produced supplemental report (dkt. #154)

Plaintiff served a supplemental 26(a)(2) disclosure and report of Jeffrey Opp, an economist, on December 5, 2022, three days after the close of discovery.  The report was dated November 15, 2022, and contains new calculations about plaintiff's future lost wages based on the implementation of pay raises and cost sharing amount increases included in the tentative 2022 SMART National Rail Contract.  (Dkt. #211.)  Defendants' motion to exclude the supplemental report will be DENIED.  Although Opp's calculations have changed based on new facts, his underlying opinions remain the same.  In addition, defendants were not prejudiced by the three-day delay in receiving the updated report, as there is time between now and trial for their own experts to review it.  Defendants' experts may respond to the updated report at trial as appropriate without a further, supplemental report.

12

### 14.  Motion to bar Carolyn Brown (dkt. #156)

Plaintiff timely disclosed one of his treating psychologists, Carolyn Brown, as a non-retained expert witness in his expert disclosures, stating that she would "testify to the nature and extent of Plaintiff's psychological injury and relationship to the subject incident." (Dkt. #207-4.)  However, plaintiff failed to disclose Brown's treatment records until December 23, 2022, three weeks after discovery had closed.  Plaintiff states that the late disclosure was inadvertent, and he argues that the late disclosure is harmless in any event.

This motion will be GRANTED IN PART and DENIED IN PART.  Plaintiff will be barred from presenting Dr. Brown's testimony unless he: (1) produces Dr. Brown for a two-hour video deposition before trial; and (2) agrees to sit for a one-hour, supplemental video deposition to respond to questions regarding Dr. Brown's treatment.  Both are to occur at a time and circumstances to be agreed upon by defendants' counsel.  If plaintiff is able to arrange both of those depositions with defendants' counsel, he may call Brown as a witness at trial and defendants' medical expert may respond to Dr. Brown's opinions at trial.  If plaintiff declines to arrange for the depositions, Dr. Brown's testimony will be excluded.

### 15. Motion to bar certain opinions of Dr. David Lund (dkt. #158)

Plaintiff also disclosed his treating psychologist Dr. David Lund as an expert who would testify regarding the permanency of plaintiff's injuries, the necessity for the imposition of restrictions and plaintiff's need for future care and treatment.  Defendants contend that plaintiff failed to disclose the bases of these opinions, which go beyond the

scope of Dr. Lund's treatment and were not disclosed in an expert report.  This motion will be GRANTED IN PART and DENIED IN PART.

Generally, a non-retained treating provider may provide expert testimony regarding their treatment and opinions formed as a result of that treatment without providing an expert report.  *Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 734 (7th Cir. 2010) (citing Fed. R. Evid. 26(a)(2)).  However, the treating provider may need to provide an expert report if his or her opinion "exceeds the scope of treatment and ventures into more general expert opinion testimony."  *Id.*  Here, plaintiff's expert disclosures provide adequate notice regarding Dr. Lund's opinions about his treatment of plaintiff, as well as opinions he formed regarding plaintiff's restrictions and prognosis during plaintiff's treatment, and Dr. Lund may testify regarding those topics at trial.

However, Dr. Lund may not testify as to any opinions he formed solely for the purpose of this litigation about plaintiff's prognosis or ongoing restrictions, or any opinions regarding plaintiff that he formed based on reviewing plaintiff's subsequent treatment records.  Such opinions would have required Dr. Lund to provide an expert report explaining the bases for his opinions.  *See id.* at 734 (treating physician may not testify about cause of plaintiff's injury without providing expert report unless arrived at during the course of treatment).

### 16.  Motion to bar plaintiff from claiming future lost wages (dkt. #160)

Defendants argue that plaintiff has no evidence about whether he will experience lost wages in the future as a result of his injuries caused by the accident; thus, he should be precluded from seeking future lost wages.  However, this motion is based on defendants'

argument that plaintiff's physician's testimony is speculative and uncertain.  As discussed above, there are genuine factual disputes regarding plaintiff's physical abilities.  Therefore, this motion will be DENIED.  After plaintiff has presented his evidence at trial, defendants may renew this motion if they believe plaintiff has failed to present evidence sufficient to support a claim of future lost wages.

### 17. Motion to preclude reference to defendants' size, financial condition, solvency or ability to pay or satisfy a judgment (dkt. #162)

This motion will be GRANTED as unopposed.  Neither side may offer evidence about Union Pacific's or PTI's size, financial condition, solvency or ability to pay a judgment.

### 18. Motion to bar reference the relative wealth or financial status of the parties (dkt. #162)

This motion will be GRANTED as unopposed.  This restriction also applies to all parties.

### 19. Motion to preclude reference to punitive or exemplary damages or that the purpose of the jury's verdict is to "send a message" to Union Pacific and PTI (dkt. #162)

This motion will be GRANTED as unopposed.

### 20. Motion to preclude reference to defendants' insurance or self-insurance (dkt. #162)

This motion will be GRANTED as unopposed.

### 21. Motion to exclude "golden rule" arguments (dkt. #162)

This motion will be GRANTED as unopposed.

**22. Motion to bar mention that the law firm representing defendants does so regularly (dkt. #162)**

This motion will be GRANTED as unopposed.

**23. Motion to preclude reference to any motions in limine or discovery disputes (dkt. #162)**

Plaintiff objects to this motion, but does not identify any reason why a motion in limine or discovery dispute should be discussed in front of the jury, and the court cannot imagine a scenario where that would be appropriate in this case, except to state "motion in limine" as the basis for an objection. Indeed, neither side will be allowed to make so-called "talking objections" before the jury. Therefore, the motion will be GRANTED.

**24. Motion to bar non-party witnesses who intend to testify from the courtroom prior to their testimony (dkt. #162)**

This motion will be GRANTED as to non-expert witnesses, but the court will not require sequestration of the parties' expert witnesses.

**25. Motion to bar reference to workers' compensation (dkt. #162)**

This motion will be GRANTED IN PART and DENIED IN PART. As the parties acknowledge, this court handles concerns about the jury's potential confusion regarding FELA and workers compensation by providing an instruction similar to the following:

> You may be familiar with workers compensation, which is a benefit available under state law and applies to most workplace injuries. But injuries to railroad employees are governed by a law called the Federal Employers Liability Act, commonly referred to as FELA. You should disregard anything you know about the rules of workers compensation. After you hear the evidence, I will give you more detailed instructions about FELA and the specific law that applies in deciding the issues in this case.

16

*See Berry*, 2022 WL 3576203, at *4 (citing *Schmitz v. Canadian Pac. Ry. Co.*, 454 F.3d 678, 685 (7th Cir. 2006).)   The court will provide a similar instruction in this case, after receiving further input from the parties at the FPTC.

### 26.  Motion to preclude evidence and arguments regarding the congressional intent or purpose of FELA (dkt. #162)

This motion will be GRANTED.   The jury does not need to hear evidence or argument about congressional intent behind FELA.   If relevant at all, this evidence or argument should be directed to the court for possible inclusion in its instructions to the jury.

### 27.  Motion to bar nondisclosed evidence (dkt. #162)

Defendants asks the court to preclude plaintiff from offering undisclosed opinions or evidence, but it fails to identify any specific evidence.   While the court will enforce the Federal Rules of Evidence (whether or not a number of these motions are filed or not), it declines to rule in the abstract.   Therefore, while this motion must be DENIED as premature and vague, if *either* party has a valid objection to any specific piece of evidence or argument, they should raise it timely as appropriate in pretrial submissions, at the FPTC, and at trial.

### 28. Motion to preclude references to settlement discussions or negotiations (dkt. #162)

This needless motion will also be GRANTED against both sides.

**29. Motion to preclude evidence or reference to railroading as being dangerous or generally unsafe (dkt. #162)**

The court agrees with defendants that general accusations of dangerousness against the railroad industry would be irrelevant and unfairly prejudicial, so this motion will be GRANTED, again with the caveat that the court will not preclude evidence or argument regarding whether specific practices or conditions were dangerous in the context of the accident in this case.

**30. Motion to preclude testimony regarding gross past wage loss (dkt. #162)**

Defendants seek to preclude plaintiff from presenting any evidence of his gross past wage loss because "net wage loss" is the appropriate measure of recoverable damages under FELA. This motion will be GRANTED IN PART and DENIED IN PART. Plaintiff agrees that his claim for past wages must be based on net wages, not gross wages. Thus, the motion will be GRANTED to the extent that neither party may argue that past wage loss should be based on gross wages. However, the motion will be DENIED to the extent that plaintiff's expert may refer to plaintiff's gross wages in his calculations to explain how he arrived at plaintiff's *net* wages after taxes.

**31. Motion to preclude plaintiff from commenting, arguing or suggesting to the jury that FELA is plaintiff's sole remedy (dkt. #162)**

This motion is GRANTED IN PART and DENIED IN PART, as set forth in the court's discussion regarding workers' compensation above.

**32. Motion to preclude plaintiff from introducing evidence of his good character (dkt. #162)**

This motion is GRANTED as unopposed.  Defendants likewise are precluded from generally characterizing themselves as "good" or "safe" employers.

**C. Defendants' motion for discovery sanctions (dkt. #207)**

This motion raises the same arguments regarding plaintiffs' experts Jeffery Opp and Carolyn Brown discussed above.  The motion is GRANTED IN PART and DENIED IN PART for the reasons stated already.

ORDER

IT IS ORDERED that:

1) Plaintiff Lukas Henderson's motions in limine (dkt. #123) are GRANTED IN PART and DENIED IN PART as set forth above.

2) Defendants' motions in limine (dkt. ##130, 132, 134, 136, 138, 140, 142, 144, 146, 148, 150, 152, 154, 156, 158, 160, 162) are GRANTED IN PART and DENIED IN PART as set forth above.

3) Defendants' motion for sanctions (dkt. #207) is GRANTED IN PART and DENIED IN PART as set forth above.

Entered this 11th day of January, 2023.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge

19